**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CORY FONDREN | Case No. 22-CR-376<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

**I.  Background & Procedural History**

A federal grand jury returned a two-count indictment charging Defendant Cory Fondren with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  *See* [1], [2].  According to the indictment, Defendant, knowing he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed, on June 1, 2021, a loaded Glock 19, nine-millimeter semiautomatic handgun, and, on October 27, 2021, a loaded Taurus PT1911, .45 caliber semiautomatic handgun.  [2] at 1–2.

Defendant moved to dismiss the Indictment based upon the Supreme Court's decision in *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), asserting both facial and as-applied challenges to the constitutionality of 18 U.S.C. § 922(g)(1) under the Second Amendment to the United States Constitution. *See* [54].  This Court permitted full briefing of the issues by both sides, *see* [54], [55], [56], [57], and held oral argument on Defendant's motion on July 30, 2024.

After full consideration of the parties' briefs and arguments, the Court denied the motion, indicating that a written decision would follow*, see* [58].  This decision constitutes the Court's findings of fact and conclusions of law.

**II.  Discussion & Analysis**

The Second Amendment provides, "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  Although courts, including the United States Supreme Court, have long upheld statutory restrictions, like 18 U.S.C. § 922(g), on felons' possession of firearms, Defendant, like many, argues that *Bruen* changed the landscape and now makes such restrictions unconstitutional.  *See* [54].  For purposes of deciding

Defendant's motion, this Court assumes that the indictment's factual allegations are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also* Fed. R. Crim. P. 12(b)(1) (Defendant "may raise by pre-trial motion any defense, objection, or request that the court can determine without a trial on the merits.").

### A. Controlling Case Law Confirms § 922(g)(1)'s Constitutionality

Binding precedent forecloses any facial invalidation of § 922(g)(1) under the Second Amendment.[1] As the Seventh Circuit held in *United States v. Gay*, such an "argument is hard to square with *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)," which affirmed "that the Second Amendment creates personal rights" and "pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." 98 F.4th 843 (7th Cir. 2024). Indeed, in *McDonald v. Chicago*, the Supreme Court again reassured readers that all of the reservations and provisos in *Heller*, including the "prohibitions on the possession of firearms by felons," retain their validity. 561 U.S. 742, 786 (2010) (plurality opinion). If any doubt remained about *Heller*'s endorsement of § 922(g)(1)'s constitutionality post-*Bruen*, the Seventh Circuit resolved such uncertainty in *Gay*.

In the absence of any definitive invalidation of § 922(g)(1) by the Supreme Court itself, the *Bruen* opinion (without more) fails to undermine the constitutionality of the statute. *See Bruen*, 597 U.S. at 72 ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns.") (Alito, J., concurring); *id*. at 80–81 (endorsing the statement in *Heller* about the propriety of denying firearms to felons) (Kavanaugh, J., joined by the Chief Justice, concurring).

Indeed, just last month, in *United States v. Rahimi*, the Supreme Court again endorsed the presumptive constitutionality of a blanket prohibition on felons possessing firearms. 144 S. Ct. 1889, 1902 (2024) ("*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"). At oral argument in this case, the Government argued that nothing in *Rahimi* undermined the Seventh Circuit's decision in *Gay*; Defendant did not dispute

---

[1] As part of today's ruling, this Court assumes, for the sake of the motion, that convicted felons constitute part of the "people" under the plain text of the Second Amendment. *United States v. Phillips*, No. 1:22-CR-00596, 2023 WL 9001124, at *6 (N.D. Ill. Dec. 28, 2023) (The "plain text of the Second Amendment" provides "no reason to think that the word 'people' does not cover, on its face, all persons—including a person convicted of a felony.").

the point, and this Court agrees. As numerous lower courts have observed, *Rahimi* reinforces the conclusion that § 922(g)(1) remains consistent with the Second Amendment. *See, e.g., United States v. Rambo*, No. 23-13772, 2024 WL 3534730, at *2 (11th Cir. July 25, 2024) ("*Rahimi* did not discuss § 922(g)(1) at all, nor did it undermine our previous interpretation of *Heller*. To the contrary, *Rahimi* reiterated that prohibitions 'like those on the possession of firearms by felons and the mentally ill, are presumptively lawful.'"); *United States v. Young*, No. 23-10464, 2024 WL 3466607, at *9 (11th Cir. July 19, 2024) (observing that in *Rahimi*, the Court once again declared that the prohibition on the possession of firearms by felons remains 'presumptively lawful); *United States v. Johnson*, No. 23-11885, 2024 WL 3371414, at *3 (11th Cir. July 11, 2024) (same); *United States v. Philpot*, No. 23-3368, 2024 WL 3429177, at *7 n.2 (6th Cir. July 16, 2024) (observing that, in *Rahimi*, the Supreme Court endorsed § 922(g)'s constitutionality); *United States v. Lewis*, No. CR 24-144 (LLA), 2024 WL 3581347, at *2 (D.D.C. July 29, 2024) ("The Supreme Court's decision last month in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), only supports the court's conclusion that Section 922(g)(1) is consistent with the Second Amendment."); *United States v. Slone*, No. CR 16-400, 2024 WL 3568571, at *3 (E.D. Pa. July 29, 2024) (the Supreme Court's decision and reasoning in *Rahimi* reinforces the constitutionality of Section 922(g)(1)"); *United States v. Singletary*, No. 23-CR-6134, 2024 WL 3407961, at *2 (W.D.N.Y. July 15, 2024) (observing that, in *Rahimi*, "the Supreme Court favorably quoted *Heller*'s statement on firearm restrictions for felons" and thus rejecting the defendant's facial challenge to § 922(g)(1)).[2]

In sum, based upon the Seventh Circuit's holding in *Gay*, as well as the Supreme Court's decision in *Rahimi*, *Bruen* merely alters the relevant test for determining the scope of the Second Amendment but leaves intact prior case law upholding the constitutionality of § 922(g)(1). *See Gay,* 98 F.4th 843; *Rahimi*,144 S. Ct. at 1902.

### B.   Historical Analysis Confirms § 922(g)(1)'s Constitutionality

Prior to *Gay*, the Seventh Circuit declined to rule on the constitutionality of § 922(g)(1) under the *Bruen* standard, pending a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" by the district court. *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023); *see also United States v. Jones*, No. 23-2459, 2024 WL 1427024, at *2 (7th Cir. Apr. 3, 2024) (acknowledging that "the historical assessment on the constitutionality" of § 922(g)(1) under *Bruen* remained "inconclusive" after *Atkinson)*. Given *Gay*'s more recent analysis of Supreme Court

---

[2] Further bolstering the notion that § 922(g)(1) remains constitutional post-*Bruen*, the Supreme Court also vacated the Third Circuit's decision in *Range v. Att'y Gen. United States of Am.,* 69 F.4th 96 (3d Cir. 2023), which found § 922(g)(1) unconstitutional as applied to a defendant whose criminal record included just a decades-old non-violent offense. The Court remanded the matter for further consideration in light of *Rahimi. See Garland v. Range*, No. 23-374, 2024 WL 3259661, at *1 (U.S. July 2, 2024).

precedent, however, an additional review of the historical evidence by this Court now appears unnecessary in this case.[3]

Nevertheless, to the degree the Defendant seeks a historical analysis by this Court in a post-*Gay* world, this Court finds that the Government has presented historical evidence (not factually disputed by the parties) and carried its burden of answering the questions presented by *Atkinson*.[4] *See* [56] at 20–43, 50–54. In short, based upon the record here, this Court adopts the well-reasoned historical review and legal analysis of Circuit Court Judge Wood in her dissent in *Atkinson*, 70 F.4th at 1025 (7th Cir. 2023) ("My own assessment of the materials that now govern Second Amendment questions per *Bruen* convinces me that the categorical prohibition created by section 922(g)(1) passes muster under the Constitution.").[5]

---

[3] In dicta, the *Gay* court suggested that, even if individuals convicted of felonies *could* assert a non-frivolous as-applied challenge, any such challenged mounted by Gay would fail because he was, by no means, a "law-abiding, responsible citizen," having been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison. 98 F.4th 843. Without a doubt, this type of hypothetical challenge, even if viable for a certain category of felons, would not help Defendant in this case, as discussed below.

[4] In *Atkinson*, the Seventh Circuit listed five questions to "help focus the proper analysis" in determining whether the statute is "consistent with this Nation's historical tradition of firearm regulation" under *Bruen*. 70 F.4th at 1020, 1024–25. Nonetheless, it acknowledged that any trial court's historical analysis would "no doubt yield some measure of indeterminacy" and that, prior to receiving additional Supreme Court guidance, the courts would "have to give the best answer available" on whether the Government met its historical-tradition burden. *Id.* at 1024. The Government has done so here, and given the absence of factual disputes by the parties, no evidentiary hearing was requested or required. *United States v. Agee*, No. 21-CR-00350-1, 2023 WL 6443924, at *6–7 (N.D. Ill. Oct. 3, 2023) ("Put another way, by not otherwise refuting the particular laws, treatises, or academic articles, [defendant] implicitly accepts that the government has presented them accurately" and thus "no evidentiary hearing is needed in this particular case" because defendant "mounts no counterattack on the accuracy of the sources.").

[5] Likewise, this Court incorporates by reference both the historical review and interpretation of Supreme Court precedent that has arisen from other persuasive authorities, each upholding the constitutionality of § 922(g)(1). *See United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) ("In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson."); *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("The longstanding prohibition on possession of firearms by felons is constitutional, and the district court properly denied the motion to dismiss."); *United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) ("Nothing in the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), reflects a retreat from the Court's earlier statement in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that 'longstanding prohibitions on the possession of firearms by felons and the mentally ill' are 'presumptively lawful.'"); *Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir.

Moreover, even if this Court considers the Defendant's "as-applied" constitutional challenge, the Court finds that such challenge also fails. First, the historical evidence alleviates the need for any case-by-case examination of as-applied challenges to § 922(g)(1). *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) ("Given these assurances by the Supreme Court, and the history that supports them, we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."); *see also Atkinson*, 70 F.4th at 1027 (Wood, J., dissenting) (suggesting that enabling individuals to seek to establish a case-specific exemption from a generally applicable criminal law would create "an arbitrary patchwork of decisions—as far from the rule of law as one could image"). As the court in *Jackson* also noted:

> If the historical regulation of firearms possession is viewed instead as an effort to address a risk of dangerousness, then the prohibition on possession by convicted felons still passes muster under historical analysis. Not all persons disarmed under historical precedents—not all Protestants or Catholics in England, not all Native Americans, not all Catholics in Maryland, not all early Americans who declined to swear an oath of loyalty—were violent or dangerous persons. The Third Circuit panel understood this fact to mean that the historical justification for regulation was not limited to dangerousness. [citing *Range v. Att'y Gen.*, 53 F.4th 262, 275–82 (3d Cir. 2022)]. But if dangerousness is considered the traditional *sine qua non* for dispossession, then history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons. Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed. In reasoning by analogy from that history, "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." [*Bruen*, 142 S. Ct. at 2132].

*Id.*, at 504; *see also United States v. Phillips*, No. 22-CR-00596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) ("Lastly, to the extent Phillips challenges the felon

---

2023) ("Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons. If anything, *Bruen* contains two potential signs of support for these prohibitions."); *United States v. Dubois*, 94 F.4th 1284, 1292–93 (11th Cir. 2024) ("The Supreme Court left no doubt that it viewed its decision as a faithful application of *Heller*, not a departure from it," confirming "that *Heller* correctly 'relied on the historical understanding of the Amendment to demark the limits on the exercise of that right.'"); *United States v. Phillips*, No. 1:22-CR-00596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) ("[T]he historical analogues provided by the government support a legislative authority to disarm persons convicted of felonies, regardless of whether the conviction involved a use (or attempted use) of force.").

dispossession statute, as applied to him, that challenge fails. Like the defendant in *Atkinson*, Phillips fails to provide 'much historical basis for individualized assessments' or carveouts between 'individuals who committed violent versus non-violent crimes' for § 922(g)(1) purposes.") (citing *Atkinson*, 70 F.4th at 1023).

Thus, while the Government "bears the burden of proving the constitutionality" of § 922(g)(1), *Bruen*, 597 U.S. at 24 (quoting *United States v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 816 (2000), it can meet its burden, based upon this historical evidence, without delving into the individualized assessment Defendant requests. *See United States v. Young*, 2023 WL 8697936, at *2–3 (N.D. Ind. Dec. 15, 2023) ("[T]he historical record shows strong support for the ability to categorically prohibit a defined group from possessing arms based on the legislature's assessment the group was dangerous or untrustworthy, without individual dangerousness assessments of group members."); *United States v. Barwicks*, No. 20-CR-00563, 2024 WL 1521473, at *13–14 (N.D. Ill. Apr. 8, 2024) (same); *United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010)) (Gorsuch, J.) (concluding that as-applied Second Amendment challenge to § 922(g)(9) could not be brought pre-trial because the defendant "contends the statute is unconstitutional only in light of the 'facts surrounding the commission of the alleged offense'—the very facts a court may not consider before trial").

Second, to the degree such an individualized challenge might be available for certain types of felons, *Gay*, 98 F.4th 843, the record in this case undermines it on the merits. As indicated in the Pretrial Services Report filed at the outset of this case, Defendant has an extensive criminal history, with multiple felony convictions, including convictions in 2007 for aggravated unlawful use of weapon and aggravated battery with a firearm, and an additional felony gun conviction charged just two months after he was released from custody on the 2007 offenses. *See* [7] at 3–5. He picked up additional charges, including felony gun charges in 2021, and criminal trespass to a vehicle in 2022, while he was on pretrial release. *Id.* at 6. And in 2022 he was charged with resisting a police officer and fleeing the scene after being stopped for driving a car purportedly stolen. *Id.* Defendant concedes the prior felony convictions, and he acknowledges that he remained on parole on June 1, 2021 and October 27, 2021, the very dates he is alleged in the current indictment to have possessed the semiautomatic firearms. [57] at 5 & n.1. Like Gay, Defendant "is not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." *Gay*, 98 F.4th 843.

**III.     Conclusion**

In short, the constitutional rights of lawful gun owners remain protected from Government overreach by the Second Amendment. But such cherished protections do not prevent legislatures from placing reasonable restrictions upon the possession of firearms by convicted felons, consistent with controlling prior precedent and the relevant historical analysis. Because § 922(g)(1) remains constitutional, both on its face and as applied to Defendant, Defendant's motion to dismiss [54] lacked merit, and the Court accordingly denied the motion on July 30, 2024.

Dated:  September 10, 2024

Entered:

_____
John Robert Blakey
United States District Judge